DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@workandwage.com
Ryan S. Dustin, Esq. (ISB No. 8683)
ryandustin@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 W. Sunnyside Rd., Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
IN THE DISTRICT OF IDAHO

| | |
|---|---|
| STIVENSON MEZA,<br><br>Plaintiff,<br><br>v.<br><br>TODD HUNZEKER FORD MERCURY, INC., an Idaho corporation,<br><br>Defendant. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Filing Fee: $400.00 |

Plaintiff, Stivenson Meza, by and through his counsel of record, Casperson Ulrich Dustin

PLLC, for cause of action against Defendant Todd Hunzeker Ford Mercury, Inc., alleges and

complains as follows:

## JURISDICTION AND VENUE

1. This is an action brought under Title VII of the Civil Rights Act of 1964, as amended, ("Title

VII"), 42 U.S.C. § 2000e, *et seq.* and the common law of the State of Idaho.

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367; and 42 U.S.C. §

2000e.

3. Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the claims arose in this judicial district. Venue also properly lies in this district pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices were committed in this judicial district.

## PARTIES

4. Plaintiff Stivenson Meza ("Meza") is a male resident of the United States of America, who resides in Soda Springs, Idaho.

5. Defendant Todd Hunzeker Ford Mercury, Inc. ("Hunzeker") is an Idaho corporation, with its principal place of business in Soda Springs, Idaho.

6. At all times material to this Complaint, Hunzeker's regularly employed fifteen or more persons, and was engaged in an industry affecting commerce, bringing Defendant within the ambit of 42 U.S.C. § 2000e, *et seq*.

## FACTS COMMON TO ALL COUNTS

7. Meza realleges and incorporates by reference paragraphs 1 through 6 above, as though fully incorporated herein.

8. Meza began working for Hunzeker in or about August 2013. At the time of his termination Meza was employed as a mechanic at Hunzeker Ford.

9. In or about early 2017 Meza's coworkers began calling him racial slurs, such as "wet back."

10. Meza reported the racial slurs and treatment to his supervisor, Dee Hunzeker. However, nothing was done and the racial slurs continued through the rest of Meza's employment with Hunzeker.

11. On or about May 9, 2018, Meza was assaulted by a Caucasian coworker. The coworker threw a heavy metal tool at Meza, striking Meza in the calf and causing injury to Meza's leg.

2 - COMPLAINT AND DEMAND FOR JURY TRIAL

12. On or about that same day, Meza reported the assault to Hunzeker. Hunzeker attempted to convince Meza to not file a police report and not to seek medical attention.

13. On or about May 10, 2018, Meza attempted to work, but due to the injury was unable to do so, and requested the rest of the day off. That day Meza sought medical attention to address the injury.

14. Meza returned to work the following day, May 11, 2018.

15. On or about May 11, 2018, Meza filed a police report against the coworker who assaulted him.

16. On or about the same day, law enforcement came to Hunzeker to conduct interviews and review evidence regarding the assault.

17. After law enforcement left Hunzeker, Meza was called into the office. Evan Wilson, Parts and Service Manager at Hunzeker, berated Meza for filing the police report and terminated Meza's employment.

18. The employee who assaulted Meza was not terminated from employment with Hunzeker. However, the employee was criminally charged with battery and pled guilty to disturbing the peace in connection with the events of May 9, 2018.

19. On or about May 24, 2018, Meza filed a Charge of Discrimination with the Idaho Human Rights Commission ("IHRC"), which was dually file with the Equal Employment Opportunity Commission.

20. On or about November 30, 2018, the IHRC issued a Probable Cause determination with regard to Meza's Charge of Discrimination, and issued Meza a Notice of Right to Sue. A true and correct copy of the Probable Cause determination is attached hereto as Exhibit A. Meza has exhausted his administrative remedies.

## COUNT I
## VIOLATION OF TITLE VII/IDAHO HUMAN RIGHTS ACT
(Hostile Work Environment)

21. Meza realleges and incorporates by reference paragraphs 1 through 20 above, as though fully incorporated herein.

22. Meza is of Peruvian origin (Hispanic) and therefore belongs to a protected class under Title VII of the Civil Rights Act of 1964.

23. Meza at all times performed his job satisfactorily.

24. Meza was called racial slurs by his coworkers based upon his national origin.

25. Meza reported the racial slurs to his immediate supervisor and asked that they stop. However, nothing was done to stop the harassing conduct.

26. Meza was subjected to racial slurs in the workplace for approximately one year prior to his termination.

27. Meza's coworkers' conduct was unwelcome.

28. Meza's coworkers' conduct was sufficiently severe or pervasive so as to alter the terms and conditions of Meza's work environment so as to create an abusive and hostile work environment.

29. Meza perceived the work environment to be abusive, hostile and/or offensive.

30. A reasonable person of Meza's national origin would consider the working environment to be abusive, hostile, and/or offensive.

31. As a direct and proximate result of Hunzeker's actions and/or failure to act, Meza has suffered and will continue to suffer emotional distress consisting of outrage, shock and humiliation based upon the racial discrimination he experienced. Further, Meza has suffered and will continue to suffered a loss of earnings and other employment benefits and job

opportunities. Meza is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to her.

32. Hunzeker's conduct was malicious and done with reckless indifference to Meza's federally protected rights. Consequently, Plaintiff is entitled to punitive damages pursuant to 42 U.S.C. § 1981a.

## COUNT II
## VIOLATION OF TITLE VII/IDAHO HUMAN RIGHTS ACT
(National Origin Discrimination)

33. Meza realleges and incorporates by reference paragraphs 1 through 32 above, as though fully incorporated herein.

34. Meza is of Peruvian Origin (Hispanic).

35. Meza was performing his job according to Hunzeker's legitimate expectations.

36. Meza suffered an adverse employment action when Hunzeker terminated his employment.

37. Meza was terminated after he reported that a Caucasian employee threw a heavy metal tool at Meza, striking Meza in the calf and causing injury, sought medical attention for the injury, and reported the assault to the police.

38. Hunzeker did not terminate the Caucasian employee who assaulted Meza.

39. Meza was terminated because of his national origin.

40. As a direct and proximate result of Hunzeker's actions and/or failure to act, Meza has suffered and will continue to suffer emotional distress consisting of outrage, shock and humiliation based upon the national origin discrimination he experienced. Further, Meza has suffered and will continue to suffered a loss of earnings and other employment benefits and job opportunities. Meza is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to him.

41.   Hunzeker's's conduct was malicious and done with reckless indifference to Meza's federally protected rights.  Consequently, Meza is entitled to punitive damages pursuant to 42 U.S.C. § 1981a.

## COUNT III
## BATTERY

42.   Meza realleges and incorporates by reference paragraphs 1 through 41 above, as though fully incorporated herein.

43.   Meza was battered by his coworker while working at Hunzeker when his coworker intentionally threw a heavy metal tool at him, and the heavy metal tool made contact with Meza's leg.

44.   The coworker's throwing of the heavy metal tool at Meza was unpermitted and done without Meza's consent.

45.   The coworker's throwing of the heavy metal tool at Meza, which made physical contact with Meza, was harmful, unlawful and/or offensive.

46.   The coworker was acting within the scope of his employment when he battered Meza.

47.   Hunzeker is responsible for the battery committed on Meza by its employee through the doctrine of *respondeat superior*.

48.   As a direct and proximate result of Hunzeker's actions and/or failure to act, Meza has suffered and will continue to suffer general damages in the form of pain and suffering, as well as medical expenses, in an amount to be proven at trial.

## COUNT IV
## NEGLIGENT/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

49.   Meza realleges and incorporates by reference paragraphs 1 through 48 above, as though fully incorporated herein.

6 - COMPLAINT AND DEMAND FOR JURY TRIAL

50.   Hunzeker had a legally recognized duty to prevent Meza from being battered at work by his coworkers, to prevent Meza from being exposed to foreseeable harm, and not to terminate Meza for illegal reasons.

51.   Hunzeker breached its duty to Meza when Meza was battered by his coworker on the job and by terminating Meza for illegal reasons.

52.   Hunzeker acted intentionally or recklessly.

53.   Hunzeker's conduct was extreme and outrageous.

54.   There is a causal connection between Hunzeker's duty to prevent Meza from being battered at work by his coworkers, to prevent Meza from being exposed to foreseeable harm, and not to terminate Meza for illegal reasons, and Hunzeker's breach of that duty

55.   Meza suffered severe emotional distress as a result of Hunzeker's actions or failure to act, and suffered physical manifestations of such emotional distress, including but not limited to sleeplessness.

56.   As a direct and proximate result of Hunzeker's actions and/or failure to act, Meza has suffered and will continue to suffer emotional distress consisting of outrage, shock and humiliation, in an amount to be proven at trial.

**COUNT V**
**NEGLIGENT SUPERVISION**

57.   Meza realleges and incorporates by reference paragraphs 1 through 56 above, as though fully incorporated herein.

58.   Hunzeker owed a Meza a duty to prevent Meza from being exposed to foreseeable harm.

59.   Hunzeker was aware that the employee who threw the heavy metal tool at Meza was a workplace violence risk due to prior actions by the employee.

60. Hunzeker was negligent in its supervision of the employee who threw the heavy metal tool at Meza by not adequately disciplining him for past events or supervising his angry outbursts, despite being aware he was a workplace violence risk.

61. As a direct and proximate result of Hunzeker's actions and/or failure to act, Meza has suffered and will continue to suffer general damages in the form of pain and suffering, as well as medical expenses, in an amount to be proven at trial.

## COUNT VI
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

62. Meza realleges and incorporates by reference paragraphs 1 through 61 above, as though fully incorporated herein.

63. Meza engaged in a protected activity when he reported a work-related injury and sought medical treatment for a work-related injury.

64. Meza engaged in a protected activity when he made a report to law enforcement that he had been battered at work by a coworker.

65. Hunzeker's termination of Meza's employment was motivated by him engaging in one or more protected activities.

66. Hunzeker violated the public policy of the State of Idaho by its retaliatory actions.

67. As a direct and proximate result of Hunzeker's actions and/or failure to act, Meza has suffered and will continue to suffer a loss of earnings and other employment based job opportunities.  Meza is therefore entitled to damages, such amount to be proven at trial, as well as other equitable remedies available to him.

## ATTORNEY'S FEES

68. As a further direct and proximate result of Hunzeker's actions and/or failures to act, Meza has been compelled to retain the services of counsel, and has thereby incurred and will

continue to incur costs and attorney's fees which should be required to be paid by Hunzeker

pursuant to Idaho Code §§ 12-120 and 12-121; and 42 U.S.C. § 2000e-5(k), *et seq.*

### DEMAND FOR JURY TRIAL

Meza demands trial by jury as to all issues triable to a jury in this action.

### PRAYER FOR RELIEF

WHEREFORE, Meza seeks judgment against Hunzeker Ford's as follows:

1. For compensatory and general damages as well as statutorily available damages in an amount as shall be proven at trial, and any available equitable remedies;

2. For punitive damages;

3. For pre-judgment interest;

4. For attorney's fees pursuant to statute and costs of suit; and

5. For such other and further relief as the Court deems just and proper.

Dated this 26th day of February, 2019.

/s/
Amanda E. Ulrich
CASPERSON ULRICH DUSTIN PLLC



## BEFORE THE IDAHO HUMAN RIGHTS COMMISSION

**Stivenson Meza**, Complainant

vs.

**Todd Hunzeker Ford Mercury, Inc.,**
Respondent
Soda Springs, Idaho

Case Nos.:    E-0518-456; 38C-
2018-00395

Basis:    National Origin
(Hispanic)

Issues:    Harassment;
Discharge

ADMINISTRATIVE REVIEW AND
COMMISSION DETERMINATION

---

### HARASSMENT

*The first issue is whether Respondent subjected Complainant to severe or pervasive harassment on the basis of his national origin.*

To establish his claim of harassment based on national origin, Complainant must prove that he was subjected to unwelcome ethnic slurs or other verbal or physical conduct relating to national origin that were sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. An employer is liable for harassment by a non-supervisory co-worker if it knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

Complainant worked for Respondent, a car dealership, for approximately five years as a mechanic. Complainant alleges, and Respondent does not refute, that for a year or so before his discharge, Complainant endured repeated racial slurs by his coworkers, including name-calling and slurs such as "wetback." Complainant reported the harassing conduct to his supervisor, Dee Hunzeker, who took no action to put an end to it. According to Complainant, during his employment, he was the only Hispanic employee at Respondent.

Respondent states that it had a policy in place at the time for reporting alleged harassment, which permitted direct reports of harassment to Respondent's owner, Todd Hunzeker. The policy, a copy of which was provided by Respondent, facilitated reporting by including Todd Hunzeker's telephone number. Respondent denies Complainant ever reported directly to Todd Hunzeker. Complainant contends he never saw or received a copy of the policy from Respondent. Importantly, Respondent does not deny that Complainant made a report of alleged national origin discrimination to his direct supervisor, Dee Hunzeker.

Stivenson Meza v. Todd Hunzeker Ford Mercury, Inc. - 1          **EXHIBIT A**

In the present case, the parties disagree about Respondent's internal policy and method for reporting allegations of harassment. Nevertheless, Respondent is liable for national origin discrimination when it knows or should have known that such conduct occurs by an employee. Once a member of management at Respondent is notified of harassing conduct, Respondent has an obligation to take prompt corrective action. This obligation arises from actual or constructive knowledge of the harassing conduct, even where there have been no "official" report of the conduct.

Respondent has not denied or refuted with convincing evidence Complainant's statement that he reported the harassing behavior to Dee Hunzeker. Because of the lack of evidence contesting Complainant's assertion that he reported the harassment to a supervisor, and because of the pervasive nature of the racial slurs at Respondent, we find that Respondent knew or should have known of the harassment. Thus, the Commission finds further that Complainant experienced repeated racial slurs; that he reported them to a member of Respondent's management; and that Respondent failed to take prompt corrective action. Complainant prevails on his charge of national origin discrimination.

## DISCHARGE

*The second issue is whether Respondent subjected Complainant to differing terms and conditions of employment on the basis of his national origin when it fired Complainant.*

To establish a prima facie case of unlawful discharge because of national origin discrimination, Complainant must establish that he was performing his job in a satisfactory manner and he was discharged under circumstances which give rise to an inference of national origin discrimination. If he proves a prima facie case of national origin discrimination, Respondent must articulate and offer evidence of a non-discriminatory reason for its action. Complainant, then, must demonstrate that Respondent's reason is false or a pretext and the real reason is national origin discrimination.

On May 9, 2018, Complainant alleges a coworker, Mr. Taylor Hamp Skinner, assaulted him over a workplace dispute; Mr. Skinner became angry and threw a metal tool at Complainant, striking him in the calf and causing injury and bruising. The parties dispute the specific conversation that ensued between Complainant, Mr. Skinner, and their supervisor, Dee Hunzeker, but Complainant received medical care and took most of the following day off from work as a result of the incident. Complainant also filed a police report alleging assault and battery by Mr. Skinner. On May 11, 2018, less than two days after the incident, Respondent discharged Complainant but not Mr. Skinner.

Respondent claims it did not fire Complainant for filing a police report, and claims it discharged Complainant because he had previous, unspecified disciplinary actions, whereas Mr. Skinner did not. Respondent has not provided specific evidence of any such discipline. Although the alleged assault and battery themselves are a potentially criminal matter and apparently unrelated to Complainant's other allegations of national origin discrimination, the issue here is Respondent's

Stivenson Meza v. Todd Hunzeker Ford Mercury, Inc. - 2

perplexing response to the incident and its decision to summarily discharge Complainant and not the aggressor in the altercation, Mr. Skinner. Although Respondent states, without supporting evidence, that Complainant had been previously disciplined, while Mr. Skinner had not. However, it is clear that Mr. Skinner initiated the conflict and acted as the aggressor in the altercation. Complainant's prima facie showing of discharge because of national origin discrimination has not been countered by Respondent with a credible non-discriminatory reason for discharge. Because Respondent failed to meet its burden of coming forward with evidence of a credible nondiscriminatory reason for Complainants discharge the Commission finds that Complainant was unlawfully discharged because of his national origin. Thus, Complainant cannot prevails on his charge that Respondent discharged him due to his national origin.

## COMMISSION DETERMINATION

Given this evidence, the Commission finds **probable cause** to support the charge of unlawful discrimination and discharge because of national origin. A staff member will be in contact with the parties to attempt resolution of the probable cause finding.

11/30/18
Date

Benjamin J. Earwicker, Ph.D., Administrator
On behalf of the Commission

be

## DETERMINACIÓN DE LA COMISIÓN

Dado esta evidencia, la Comisión acierta **causa probable** en creer que discriminación ilícita ha ocurrido. Un/a miembro/a del equipo estará en contacto con ambos grupos para intentar resolución del descubrimiento de causa probable.

Stivenson Meza v. Todd Hunzeker Ford Mercury, Inc. - 3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the _30_ day of November, 2018, I caused a true and correct copy of the foregoing document to be served as follows:

Amanda E. Ulrich
Casperson Ulrich Dustin
356 W. Sunnyside Rd. STE B
Idaho Falls, ID. 83402

[X] U.S. Mail
[ ] Hand Delivery
[ ] Via Facsimile

Todd Hunzeker, Owner
Todd Hunzeker Ford Mercury, Inc.
381 South 3rd West
Soda Springs, ID. 83276

[X] U.S. Mail
[ ] Hand Delivery
[ ] Via Facsimile

Stivenson Meza v. Todd Hunzeker Ford Mercury, Inc. - 4